UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL D. JOHNSON,

                          Plaintiff,

v.

HEIDI WASHINGTON, MARTI KAY SHERRY,
CRAIG HUTCHISON, PRIMA MUZIRMAN,
JUDY CRISENBERY, ANDREA EDGAR,
TODD LAMBART and  RANDEE REWERTS,

                          Defendants.

Case No. 20-11280
Honorable Mark A. Goldsmith
Magistrate Judge David R. Grand

_____/

## REPORT AND RECOMMENDATION TO GRANT THE MDOC DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (ECF No. 31)

On May 21, 2020, Plaintiff Carl D. Johnson, then an incarcerated person, commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Eighth Amendment to the United States Constitution against various Michigan Department of Corrections ("MDOC") officials ("MDOC Defendants")[1] and employees of Corizon, Inc. ("Corizon Defendants")[2], which provides medical care to MDOC inmates.  The gist of Johnson's Eighth Amendment claim is that prior to being incarcerated, his personal physician prescribed Famvir "to treat an immunological disorder that puts him at serious risk of viral infections and aggressive cancer," but that Defendants acted with deliberate indifference in refusing to provide him with that medication (or other

_____

[1] The MDOC Defendants are MDOC Director Heidi E. Washington, Bureau of Health Care Services employee Marti Kay Sherry, Health Unit Manager ("HUM") Judy Crisenbery, HUM Todd Lambart, and Warden Randee Rewerts.

[2] The Corizon Defendants are Dr. Craig Hutchinson, Nurse Practitioner Prima Muzirman, and Physician's Assistant ("PA") Andrea Edgar.

"workable alternative" medication). (ECF Nos. 8, PageID.92; No. 26, PageID.528-30.)

Both sets of Defendants filed motions to dismiss, but Johnson has since settled his claims against the Corizon Defendants, and they have been dismissed from the case.  (ECF No. 40.) Accordingly, Johnson's only remaining claims are those he asserts against the MDOC Defendants.

Now pending before the Court is the MDOC Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.  (ECF No. 31.)  Johnson filed a response.  (ECF No. 38.)  The MDOC Defendants did not file a reply.  Having reviewed Johnson's amended complaint and the parties' motion papers, the Court finds a hearing is unnecessary.

## I.  Recommendation

For the following reasons, the Court **RECOMMENDS** that the MDOC Defendants' motion to dismiss **(ECF No. 31)** be **GRANTED.**

## II.  Report

### A.  Background

Johnson alleges that he "suffers from chronic pain attributed to a serious immunologic disorder associated with immune dysfunction, chronic infections, secondary small fiber neuropathy, secondary autonomic dysfunction, all of which is triggering a secondary fibromyalgia, reactivation of a number of viruses, including, but not limited to, the HHV-6 Variant A virus, a highly serious viral infection ('medical condition')."  (ECF No. 26, PageID.525.)  Prior to his incarceration at the MDOC, Johnson had been prescribed Famvir by his treating physician, Dr. Jacob Teitelbaum.  (*Id.* at PageID.526.)

Johnson's then attorney, Daniel Damman, wrote several letters to certain MDOC Defendants detailing Johnson's medical condition and the consequences to him of ceasing to take Famvir.  (*Id.* at PageID.527.)  On November 6, 2019, Damman wrote Health Care Services

Director Marti Kay Sherry.  (*Id.*)  On November 18, 2019, Damman wrote MDOC Director Washington and MDOC employee Sherry.  (*Id.*)  On November 21, 2019, Damman wrote Director Washington again.  (*Id.*)

That same day, Johnson underwent his initial intake at Charles Egeler Correctional Facility. (*Id.* at PageID.525-26.)  He provided NP Muzirman and HUM Crisenbery documents detailing his HHV-6 Variant A diagnosis from treating physicians Dr. Teitelbaum and Dr. Peterson, copies of his medication prescriptions, and other documents regarding his medical needs.  (*Id.*)  This included a copy of his Sentence and Commitment Order in which the trial judge indicated "DEFENDANT HAS BEEN SUFFERING FROM A VERY UNUSUAL MEDICAL CNDITION [*sic*] FOR SEVERAL YEARS. HE HAS RECENTLY BEEN PRESCRIBED SOME HIGHLY SPECIALIZED MEDICATION FOR HIS CONDITION. IT WOULD BE APPRECIATED IF THE MDOC COULD ADDRESS HIS MEDICAL NEEDS IN A [*sic*] EXPEDITIOUS FASHION", as well as "letters and documents describing in detail [his] diagnosis of his serious Medical Condition, including but not limited to, the HHV-6 Variant A virus infection." (ECF Nos. 26-9, PageID.565; No. 26, PageID.525-26.)  Johnson alleges he discussed these documents, his medical condition, and his current course of treatment with Muzirman and Crisenbery.  (*Id.* at PageID.526.)  He also discussed his need to continue taking Famvir and noted that while he had been at the St. Clair County Jail prior to being transferred to the MDOC he had been receiving this medication.  (*Id.*)  According to Johnson, Muzirman and Crisenbery informed him that "doctors 'Coleman' and 'Laskey' are the 'decision makers, about prescriptions and would make any such decisions as to [Johnson's] care and treatment." (*Id.* at PageID.527.)

Johnson alleges that both Muzirman and Crisenbery spoke with Dr. Teitelbaum regarding his medical condition.  (*Id.* at PageID.527-528.)  On November 27, 2019, Dr. Teitelbaum sent a

3

letter to Muzirman in which he advocated for treatment with Famvir and other "necessary prescriptions" and detailed the consequences of failing to treat Johnson's medical condition. (*Id.* at PageID.528.) Following receipt of the November 27, 2019 letter, Muzirman allegedly informed Johnson that the medications requested by Dr. Teitelbaum had been denied due to cost, with the exception of Hydrocortisone. (*Id.*)

However, Johnson was not denied treatment for his condition; he alleges that instead of Famvir, he "was prescribed Zovirax (a generic form of Acyclovir)," and that he was started on Acyclovir on December 18, 2019, with an end date of May 22, 2020.[3] (*Id.* at PageID.528-29.) Importantly, while Johnson alleges that Dr. Teitelbaum had informed *Corizon Defendant Muzirman* that Zovirax would be ineffective in treating his medical condition, he makes no similar allegation against the MDOC Defendants.[4] (*Id.* at PageID.528.)

On January 7, 2020, the MDOC transferred Johnson to the Carson City Correctional Facility. (*Id.* at PageID.529.) Johnson was still receiving the Acyclovir prescription at that time. On January 14, 2020, Johnson had a telemed consultation with Corizon employee, Dr. Craig Hutchinson, an infectious disease specialist. (*Id.* at PageID.529.) Johnson alleges that during the consultation, Dr. Hutchinson "downplayed" his medical condition, refused to review his PCR test

---

[3] The Court notes that the medical records Johnson attached to his operative complaint indicate that the Acyclovir prescription was started on November 27, 2019, with an end date of February 27, 2020. (ECF No. 26-14, PageID.580.) Those records appear consistent with a March 13, 2020 letter from Johnson's attorney to the MDOC in which he states that Johnson had been provided Acyclovir for six weeks prior to a prison transfer that took place in early January. (ECF No. 26-13, PageID.578.) Either way, the discrepancy is largely immaterial because, as discussed below, Johnson's allegations make clear that it was the Corizon Defendants who were directly involved in the medical decisions about which he complains, including the decision on *January 14, 2020*, to discontinue the Acyclovir prescription.

[4] Indeed, as discussed below, one of Johnson's attorneys later wrote to the MDOC, asserting that Acyclovir was a "proper course of treatment," and making a "demand" for Johnson to receive that medication. *See infra* at 6.

(which would prove Johnson is infected with HHV-6 Variant A), and "expressed little to no interest in contacting either Dr. Teitelbaum or Dr. Peterson. (*Id.*) Shortly after this consultation, Dr. Hutchinson discontinued Johnson's Acyclovir prescription (ahead of the original February 27 or May 22, 2020 end date), without prescribing any alternatives. (*Id.*)

Virtually all of Johnson's remaining factual allegations relate to conduct by *Corizon Defendants*, principally by Corizon employee PA Andrea Edgar. Specifically, Johnson alleges that he notified "medical staff" that he was experiencing "excruciating pain and agony" *after* his Acyclovir/Zovirax prescription was discontinued, and that on January 30, 2020, he "begged PA Edgar to help him and requested PA Edgar re-issue the medication necessary to help control the HHV-6 Variant A Virus…" (*Id.* at PageID.530.) Johnson claims that "*PA Edgar* refused [his] requests, informing [him] that all medication was discontinued *per the directives of Dr. Hutchinson*." (*Id.*) (emphasis added.)

Johnson's additional allegations against PA Edgar are even more severe. He alleges that PA Edgar "downplayed" his illness and commented, "I don't know what to tell you, guess you should not have come to prison." (*Id.*) Johnson alleges that he "informed PA Edgar that he was now suffering from a back and forth of severe diarrhea and constipation, could not sleep due to the constant, agonizing pain he has been left with since all medications were discontinued, and was often vomiting." (*Id.* at PageID.531.) Johnson alleges that "immediately after" his meeting with PA Edgar, he returned to his housing unit where he was informed, "'medical' just called and directed that [his] walking cane issued to [him] on November 22, 2019 was to be confiscated. [His] cane was taken from him, leaving him in great difficulty when attempting to ambulate for any distance due to the severe pain he was experiencing due to the HHV-6 Variant A virus and the other Medical Conditions being left untreated." (*Id.*) Further, Johnson alleges that the next day,

PA Edgar revoked his "No Work" medical restriction and replaced it with full work clearance. (*Id.*)

Johnson makes other allegations of hostile treatment by PA Edgar.  For instance, he alleges that PA Edgar "approached [him] in a hostile manner and began accusing [him] of 'refusing' treatment for his prostate," and that after he "calmly explained to NP [sic] Edgar that she was mistaken . . . NP [sic] Edgar accused [him] of lying about this matter and informed [him] that as he 'refused' treatment for his prostate, [] he will be lucky if she decides to reschedule him for this procedure, and that it will be at least three months before she will do that, if at all."  (*Id.*)

Finally, Johnson alleges that on March 13, 2020, attorney Damman wrote to Director Washington, Warden Rewerts, MDOC HUM Todd Lambert, and Health Information Manager ("HIM") M. Brown.  (*Id.* at PageID.534.)  In this letter, Johnson's attorney noted that "The MDOC has also treated Mr. Johnson with the generic form of Famvir, ACYCLOVIR[,] for a period of 6 (6) weeks prior to his transfer to The Carson City Correctional Facility.  THUS, THE MDOC HAS ACKNOWLEDGED THAT THIS IS THE PROPER COURSE OF TREATMENT . . . DEMAND IS HEREBY MADE FOR MR. JOHNSON TO RECEIVE FAMVIR/ACYCLOVIR 750 MG 3X/DAY".  (ECF No. 26-13, PageID.578) (capitalization in original.)

On May 21, 2020, Johnson commenced this action, alleging that as a result of the Defendants' alleged conduct, he suffered the following symptoms:

(1) sudden violent shaking due to sudden spikes in pain;
(2) severe sleep deprivation due to pain;
(3) horrible, burning sensations, mainly from his head and down his spine;
(4) sudden onsets of headaches with painful pressure feeling behind his eyes;
(5) severe muscle pains throughout his body, with an emphasis on his neck area;
(6) constant nausea, fatigue, and shortness of breath;
(7) lowered immune system causing the Plaintiff to constantly suffer from colds; and
(8) severe bouts with a back and forth diarrhea and constipation.

(*Id.* at PageID.531-32.)

Johnson has since settled with the Corizon Defendants and they have been dismissed from this case. (ECF No. 40.) The MDOC Defendants have moved to dismiss Johnson's complaint, arguing principally that Johnson failed to adequately allege their personal involvement in any violation of his Eighth Amendment rights.[5]

### B. Motion to Dismiss Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

---

[5] The MDOC Defendants also argue that Johnson's official capacity claims for money damages fail as a matter of law. While Johnson notes that he also seeks injunctive relief (ECF No. 38, PageID.742), he does not dispute that "[t]o the extent that [he] seeks money damages, costs, and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity." *Mays v. Pynnonen*, No. 2:17-CV-00167, 2021 WL 469041, at *16 (W.D. Mich. Jan. 5, 2021). Indeed, the "doctrine of sovereign immunity is granted by the Eleventh Amendment to the Constitution and bars § 1983 claims for money damages brought against a state or its employees in their official capacity." *Klein v. Univ. of Michigan, Bd. of Regents*, No. CV 17-11192, 2018 WL 1614090, at *11 (E.D. Mich. Feb. 23, 2018) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984)). Accordingly, Johnson's official capacity claims for money damages should be dismissed.

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenant, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Defendants have, in certain respects, gone beyond the pleadings to support their instant motion.  For example, the MDOC Defendants offer portions of Johnson's medical records previously filed as part of the briefing on Johnson's motion for temporary restraining order to "show that he [Johnson] received medical care in MDOC custody for the specific ailments at issue in the complaint…" (ECF No. 31, PageID.697.) The Court has discretion as to whether it will consider such extrinsic evidence presented in connection with a motion to dismiss, though if it does, it must treat the motion as one for summary judgment and give the opposing party an opportunity to address or further develop the evidence. *See e.g.*, *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 446 (W.D. Mich. 2009) ("... if the Court considers an affidavit attached to a motion to dismiss, the Court must convert the motion into one for summary judgment."). *See also*, Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Here, the Court finds that it may

resolve the issues raised in the MDOC Defendants' motion to dismiss by considering only Johnson's complaint and the documents attached thereto and referred to therein.

### C.  Analysis

#### i.  *Deliberate Indifference Standards*

To prevail on his Eighth Amendment claim against any particular MDOC Defendant, Johnson must prove that *that defendant* was "deliberately indifferent" to his serious medical needs. In *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010), the Sixth Circuit explained the general standards that apply to such claims:

> A Section 1983 claim asserting "[a] constitutional [violation] for denial of medical care has objective and subjective components." []  The objective component requires the existence of a 'sufficiently serious' medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 [] (1994) (citation omitted).  Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).  The subjective element requires 'an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." [].  Officials have a sufficiently culpable state of mind where officials act with "deliberate indifference" to a serious medical need.  *Farmer*, 511 U.S. at 834 [] (citations omitted).  The Supreme Court has defined "deliberate indifference" as being more than mere negligence but less than acting with purpose or knowledge.  *Id.* at 835 [].  Instead, the prison official must have acted with a state of mind similar to recklessness.  *Id.* at 836 [].  Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk.  *Id.* at 837 []; *see also Cooper v. County of Washtenaw*, 222 Fed. Appx. 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

*Jones*, 625 F.3d at 941 (some internal citations omitted).

The requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an

ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prison is the equivalent of recklessly disregarding that risk.'

*Id*. (internal citations omitted).

The law is clear, however, that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 Fed.Appx. 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Finally, and most significantly to the specific allegations Johnson levies against the MDOC Defendants, "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992). Rather, an individual's "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)

10

(quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)).  "Because §

1983 liability cannot be imposed under a theory of respondeat superior, proof of personal

involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun Cty.*, 408

F.3d 803, 817 n.3 (6th Cir. 2005).  Moreover, the plaintiff must allege the defendant's "personal

involvement *in the allegedly unconstitutional acts*" themselves.  *Hyman v. Officer Clyde Lewis*,

No. 19-11821, 2021 WL 795568, at *3 (E.D. Mich. Mar. 2, 2021) (emphasis added).  *See also*

*Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (holding that to state a valid Section

1983 claim, "a complaint must allege that the defendants were personally involved in the alleged

deprivation of federal rights").  Accordingly, the law is clear that merely being aware of an alleged

constitutional violation and failing to "take appropriate action . . . is insufficient to impose liability

on supervisory personnel under § 1983."  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

Still, this is not to say that a prison administrator could never be liable for any act of her

subordinates.  A supervisor may be deemed to be "actively involved" in unconstitutional conduct

if she "encouraged the specific incident of misconduct or in some other way *directly participated*

*in it*." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (emphasis added).

ii.   *Johnson Fails to Allege Facts Establishing the MDOC Defendants'*
      *"Personal Involvement" in the Alleged Constitutional Violation*

In moving for dismissal, the MDOC Defendants argue that the factual allegations in

Johnson's complaint "do not sufficiently plead an Eighth Amendment violation because the

MDOC Defendants did not have enough personal involvement" in the constitutional violation

alleged by Johnson.  (ECF No. 31, PageID.690.)[6]  The Court agrees.

---

[6] The MDOC Defendants do not argue that Johnson failed to plead a claim that satisfies the
objective component. (ECF No. 38.)  The Court will therefore assume Johnson's medical condition
satisfies that component of his Eighth Amendment claim.

1.     *Director Washington*

The pertinent facts alleged by Johnson regarding Director Washington are that she received three letters from Johnson's attorney that advised her of Johnson's serious health condition and his need for certain medications. (ECF Nos. 26-10, PageID.567-69; No. 26-12, PageID.574-75; No. 26-13, PageID.577-78.) These letters stated that "Mr. Johnson through Dr. Teitelbaum's intervention has been able to suppress the replication of the virus [HHV-6 Variant A] through the use of anti-virals, specifically Famvir 750mg 3x Daily." (ECF No. 26-10, PageID.568.) One letter stated, "[a]ccording to his specialists, without proper treatment Mr. Johnson will revert to being bed bound and infectious to other inmates." (ECF No. 26-12, PageID.575) Finally, Johnson's attorney made a demand for the plaintiff "TO RECEIVE FAMVIR/ACYCLOVIR 750 MG 3X/DAY." (ECF No. 26-13, PageID.578) (emphasis in original.)  Washington's mere receipt of these letters does not constitute her "personal involvement" in the alleged unconstitutional wrong allegedly suffered by Johnson.

Defendant Washington is the Director of the entire MDOC.  Johnson does not allege that she is a medical doctor or that she is a medical provider.  Indeed, Johnson does not allege that Director Washington has any medical training whatsoever, let alone the training necessary to evaluate his specific medication needs.  Thus, as it relates to the claims in this case, Johnson's claim against Washington boils down to an assertion that she was a supervisor who failed to take the action Johnson was requesting.  However, in *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016), the Sixth Circuit stated, "[s]upervisors are often one step or more removed from the actual conduct of their subordinates; therefore, the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct[…] Consequently, a

12

mere failure to act will not suffice to establish supervisory liability." *Id.* That is precisely the case here; Johnson's constitutional complaint is about the decision to deny and/or discontinue the medication he contends he needed. Those decisions were made by Corizon's medical professionals, not the MDOC's highest-level prison administrator.

Moreover, Johnson does not allege that Washington directed the Corizon medical providers to take (or not take) any particular action. Nor does he allege that Washington interfered in any way with the normal course of providing medical care within the MDOC; as discussed herein, Johnson had an intake consultation after which he was prescribed and provided with medication (Acyclovir) that his own attorneys urged the MDOC to provide him with, and he later was seen by the Corizon Defendants for further review of his medical needs.

In sum, because Washington is not alleged to have had any personal involvement in the salient medical decisions, nor to have actively encouraged or interfered with those medical decisions, Johnson's Eighth Amendment claim against her fails. *Id.*; *Winkler v. Maddison Cnty*, 893 F.3d 877, 898 (6th Cir 2018) (mere knowledge of an inmate's medical condition was insufficient to find supervisors deliberately indifferent); *Peatross*, 818 F.3d at 242; *Hyman*, 2021 WL 795568, at *3; *Frazier*, 41 F. App'x at 764;. Johnson's Eighth Amendment claim against Washington should therefore be dismissed.

2.   *Bureau of Health Care Services Employee Marti Kay Sherry*

MDOC Defendant Marti Kay Sherry is the Bureau of Health Care Services Director for the MDOC. Although Sherry is a health care service employee, as with Washington, Johnson's complaint makes clear that she had only a supervisory role, and had no direct involvement in his medical care. While Johnson alleges that Sherry is "legally responsible for the health care and welfare of all inmates in the Michigan Department of Corrections," this merely identifies her as a

"supervisor."   Johnson's more salient factual allegations show that she had no personal involvement in the alleged constitutional wrong.  Nowhere in his complaint does Johnson allege that he saw Sherry in person.  Instead, Johnson alleges merely that Sherry received various letters regarding his condition that should have put her on notice of his serious health condition and need for Famvir. (ECF No. 26-10, PageID.567-69; No. 26-11, PageID.571-72; No. 26-12, PageID.574-75.)  These letters stated that "Mr. Johnson through Dr. Teitelbaum's intervention has been able to suppress the replication of the virus [HHV-6 Variant A] through the use of anti-virals, specifically Famvir 750mg 3x Daily," and that "[a]ccording to his specialists, without proper treatment Mr. Johnson will revert to being bed bound and infectious to other inmates.". (ECF Nos. 26-10, PageID.568; No. 26-11, PageID.572; No. 26-12, PageID.575.)

But none of those allegations suggest Sherry directly participated in any unconstitutional conduct.  As with Washington, as a supervisor, Sherry's mere awareness that Johnson complained about his medical care does not rise to the level of deliberate indifference. *Hyman*, 2021 WL 795568, at *3; *Frazier*, 41 F. App'x at 764; *Winkler*, 893 F.3d at 898; *Peatross*, 818 F.3d at 242. Therefore Johnson's Eighth Amendment claim against Sherry should be dismissed.

### 3. *Health Unit Manager Todd Lambart and Warden Rewerts*

MDOC Defendant Rewerts is the Carson City Correctional Facility's Warden, and MDOC Defendant Lambart is a Health Unit Manager there.  Johnson's salient factual allegations against these two individuals are exceedingly thin, and fail to adequately allege either one's "personal involvement" in the alleged unconstitutional conduct.  In Paragraph 53 of his amended complaint, Johnson alleges that both Lambart and Rewerts were sent attorney Damman's March 13, 2020 letter "requesting Plaintiff receive medical care and treatment for his HHV-6 Variant A viral infection and other Medical Conditions." (ECF No. 26, PageID.534.)  He then adds the conclusory

assertion that each one's "actions exhibit a deliberate indifference to clear medical needs and violated Plaintiff's rights under the Eighth Amendment to the United States Constitution, and caused Plaintiff pain, suffering, physical injury and emotional distress." (*Id.*, PageID.538.)

As with Washington and Sherry, Johnson's allegations against Lambart and Rewerts do not suggest that either one *directly participated* in unconstitutional conduct. *Peatross*, 818 F.3d at 241. Merely receiving a letter that made them aware of Johnson's professed medical needs is far from direct participation in any decision about what medications Johnson would receive, and therefore an insufficient basis to impose Section 1983 liability. *Hyman*, 2021 WL 795568, at *3; *Frazier*, 41 F. App'x at 764; *Winkler v. Maddison Cnty*, 893 F.3d 877, 898 (6th Cir 2018); *Peatross*, 818 F.3d at 242; *Poe*, 853 F.2d at 429. Moreover, Johnson's conclusory assertion that Lambart and Rewerts "exhibit[ed] a deliberate indifference to [his] clear medical needs" is just a recitation of the boilerplate elements of his claim, and provides none of the "factual matter" required to get his claim past the motion to dismiss stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, Johnson's Eighth Amendment claim against Defendants Lambart and Rewerts should be dismissed.

### 4.   *Health Unit Manager Judy Crisenbery*

Crisenbery is the only MDOC Defendant who had personal contact with Johnson. (ECF No. 26.) However, that alone is not enough to adequately plead an Eighth Amendment claim against her. Rather, to satisfy the subjective component of his Eight Amendment claim against Crisenbery, Johnson was required to allege facts showing that she subjectively knew of the unconstitutional conduct and that it caused him to needlessly suffer. The allegations in Johnson's complaint fail to do so.

According to Johnson's complaint, on November 21, 2019, Crisenbery was present at the

Charles Egeler Correctional Facility for his "intake," and she was presented with his medical documentation. (*Id.* at PageID.525-26.) However, Johnson admits that after being made aware of his medical condition, Crisenbery explained that doctors "Coleman" and "Laskey" were the "decision makers" with respect to prescriptions and treatments. (*Id.* at PageID.526.) Johnson does not make any factual allegations to the contrary, nor does he allege that Crisenbery had the authority to change his course of treatment. Moreover, Johnson admits that after his intake with Crisenbery, he was prescribed Acyclovir, which his own attorney later advised the MDOC was "THE PROPER COURSE OF TREATMENT." Importantly, Johnson was still receiving that medication on January 7, 2020, when the MDOC transferred him to the Carson City Correctional Facility. (*Id.* at PageID.529.) Johnson does not allege that he had any further contact with Crisenbery after this point. Moreover, Johnson has not pled sufficient facts to show that Crisenbery became aware that Dr. Hutchinson had later canceled Johnson's Acyclovir prescription, let alone that Johnson was suffering the debilitating consequences alleged in his complaint. Accordingly, the Court finds that Johnson failed to allege sufficient facts to support a claim of deliberate indifference against Crisenbery.

That finding is amplified by comparing Johnson's allegations against Crisenbery to the ones he makes against Corizon Defendants Dr. Hutchinson and PA Edgar. As discussed above, *supra* at 4-6, Johnson's amended complaint makes clear his contention that it was Corizon Defendant Dr. Hutchinson who terminated the Acyclovir he had been prescribed *after meeting with Crisenbery*, and that it was Corizon Defendant PA Edgar who not only refused his pleas about the pain he was in and rejected his requests to "re-issue" the Acyclovir, but who then "downplayed" his condition and teased and harassed him by revoking his "no work" restriction, confiscating his cane, and threatening to cancel his prostate procedure. Unlike his vague and

conclusory allegations against Crisenbery, these types of allegations supply factual content that speaks to the type of conduct a deliberate indifference claim is designed to address; they show not just the actors' mere knowledge of Johnson's complaints, but rather, their direct personal involvement in the conscious and reckless (and arguably malicious) disregard of a known risk to his serious medical needs.

Finally, Johnson attempts to show deliberate indifference by Crisenbery by arguing, "[Crisenbery] eventually corresponded with Dr. Teitelbaum regarding Mr. Johnson's need for Famvir and his related medical background." (ECF No. 38, PageID.739) (citing ECF No. 26, ¶¶18-27 PageID.527-28.) However, most all of the paragraphs Johnson cites for this allegation make no mention of Crisenbery. (*Id.*) And, merely corresponding with Johnson's doctor cannot show Crisenbery was deliberately indifferent when, following her involvement in Johnson's intake, he was prescribed Acyclovir. *Poe*, 853 F.2d at 429; *Winkler*, 893 F.3d at 898. Moreover, while Johnson argues in his response brief that "Crisenbery declined to provide Mr. Johnson continued access to Famvir due to alleged 'cost,'" in reality, Johnson's complaint levels that allegation only against Corizon Defendant Muzirman. (*Compare* ECF No. 38, PageID.739 and No. 26, ¶¶26, PageID.528.)

For all of these reasons, Johnson has not alleged facts which show that Crisenbery was directly involved in any unconstitutional conduct, and Johnson's claim against her should be dismissed.

### iii.  Application of Darrah v. Krisher

In attempting to overcome the MDOC Defendants' motion to dismiss, Johnson relies heavily on the Sixth Circuit decision of *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), which held that the "failure to provide an inmate with his required medication is more than sufficient to

establish a § 1983 claim." *Id*. at 368.[7]  While the overall facts alleged in Johnson's complaint certainly implicate *Darrah's* holding and are quite concerning, nothing in that decision allows the Court to overlook the requirement that for any particular defendant to be liable under Section 1983, he or she must have been personally involved in the unconstitutional conduct.  Thus, while *Darrah's* holding may well have been a valid response to the *Corizon Defendants'* motion to dismiss, as they were the ones who actually treated Johnson and who made the determination to discontinue Acyclovir, it does not change the above analysis as to the MDOC Defendants who had no such direct involvement in the alleged unconstitutional conduct.

### D.  Conclusion

For the reasons set forth above, the Court **RECOMMENDS** that the MDOC Defendants' Motion to Dismiss for Failure to State a Claim **(ECF No. 31) be GRANTED.**

Dated: March 25, 2021                                s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                         United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others

---

[7] *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991) (holding that "interruption of a prescribed plan of treatment could constitute a constitutional violation.").

with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
